# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:10cr260

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| GREGORY D. ANDERSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on defendant's Motion to Sever Counts (#85). Defendant requests that the court sever Counts 1-45, alleging mortgage fraud schemes, in the Superseding Bill of Indictment, from Count 46, alleging assault on the officers while they were attempting to execute the arrest warrant issued by this court based on an indictment earlier returned on the mortgage fraud scheme. The government has filed its Response (#91), and arguments were heard on July 26, 2012.

## FINDINGS AND CONCLUSIONS

As the court has earlier conducted an evidentiary hearing in this matter, the facts as presented in the government's response coincide with the evidence presented during that hearing as well as historical pleadings filed in this case. Such factual recitation is intended only to aid review and is not intended to bind the parties at trial.

On December 15, 2010, the United States presented and the Grand Jury returned an indictment charging defendant with thirty counts of bank fraud, wire fraud, making false statements on Department of Housing and Urban Development documents, and money laundering, acts which were allegedly committed between 2006 and 2009 and related to a mortgage fraud scheme. Upon making the return of the Indictment (#1) on December 15,

2010, this court issued a Warrant (#2) for defendant's arrest that same day.

As in substantial part testified to at the earlier suppression hearing, the day following issuance of the arrest warrant the case agents began a five month search for defendant. On January 3, 2011, FBI Special Agent ("SA") Karen Walsh, who had been in contact with defendant prior to indictment, texted defendant stating that a federal warrant was issued for his arrest and directing him to turn himself in. On January 7, 2011, defendant left a voicemail for SA Walsh, stating that he was aware of the warrant for his arrest. On January 26 and February 2, 2011, agents planned to arrest defendant when he made a court appearance in state court, but he failed to appear as ordered by state authorities.

On February 2, 2011, the case agents were walking up a sidewalk in an apartment complex, on their way to interview the mother of defendant's infant daughter, when they observed defendant open the apartment door and walk out. Defendant apparently saw the case agents approaching because he immediately returned to the apartment and slammed the door shut. The agents ran up to the apartment and called for defendant to open the door. A woman holding an infant opened the door. She stated that defendant was not there, but allowed the agents in to look for themselves. The agents cleared the apartment and observed that the sliding door to the second floor balcony was open and immediately ran to the ground floor to search for defendant. They observed marks in the mud under the balcony where it appeared that someone had jumped, but they could not locate defendant. Afterwards, the woman in the apartment stated that she was the mother of defendant's daughter and that defendant had been there to visit them, but she did not know that he was wanted by law enforcement.

The agents then called defendant on a cell phone number provided by his child's mother. He told agents he planned to turn himself in to authorities after he raised enough

money to hire Attorney Randy Lee. On February 11, 2011, the case agents executed a consent search on a car repossessed from the child's mother. The agents became aware of the car when they saw a phonebook in the mother's apartment opened to a towing company's page. Inside the car, the agent found documents that were responsive to the grand jury's subpoena to Work Solutions. Agents also learned that the car had been towed from the parking lot of the Kohls store in Matthews, North Carolina, abandoned after a homeless man recruited by defendant was caught shoplifting.

On March 3, 2011, agents were notified that defendant's former accountant had called 911 to report that defendant had just visited her. However, defendant became suspicious and backed his car across four lanes of Beatties Ford Road in an apparent effort to prevent the accountant from recording the license plate number on the car that he was driving.

During the early morning hours of April 26, 2011, defendant was tracked by an FBI surveillance team to an address near Eastway Drive in Charlotte. The case agents sought the assistance of the Charlotte-Mecklenburg Police Department ("CMPD") Violent Crime Apprehension Team ("VCAT") in executing this court's warrant for defendant's arrest. During his arrest, defendant allegedly resisted and fought the officers trying to subdue him. Even after he was stunned several times with a stun gun, defendant allegedly continued to fight arrest, allegedly causing three VCAT officers to suffer injuries as they reached for him through the car's broken windows. Defendant was apprehended and three VCAT officers went to the hospital to have their wounds cleaned and treated. The events surrounding the execution of this court's warrant are the proffered circumstances surrounding Count Forty-Six of the Second Superseding Bill of Indictment.

### III. Discussion

Motions to sever are governed by Rules 8 and 14 of the Federal Rules of Criminal

Procedure, and a two-step analysis is necessary. See 8 Moore's Federal Practice, ¶ 13.03[2] at 13-9 (Matthew Bender). The first step is to determine whether the counts were initially joined by the Grand Jury in accordance with Rule 8. If they are deemed properly joined, the analysis proceeds to the second step, which requires a determination of whether such joinder, while satisfying Rule 8, is nevertheless unfairly prejudicial under Rule 14 when weighed against judicial efficiency.

### A. Rule 8 Inquiry

The first inquiry concerns the Grand Jury's joinder of 46 counts in one indictment. Rule 8(a) provides:

> **(a) Joinder of Offenses**. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed.R.Crim.P. 8(a). Thus, joinder of counts is appropriate where the offenses were based on the same underlying transaction or on two or more transactions which were either connected together or constituted parts of a common scheme or plan. In Cataneo v. United States, 167 F.2d 820, 822 (4th Cir. 1948), the Court of Appeals for the Fourth Circuit explained the term "transaction":

> This is not a technical term, nor is it a word of art. It has been variously defined and applied in numerous cases arising under the old Federal Equity Rules and in Code Pleading in connection with the joinder of causes of action and the permissibility of interposing counterclaims. Oft-quoted is the remark (under Equity Rule 30) of Mr. Justice Sutherland, in *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 [1926]. . . "`Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."

Id., at 823. In more recent cases, appellate courts have held that joinder is proper where common activity constitutes a substantial portion of the proof of joined charges. United

States v. Roselli, 432 F.2d 879 (9th Cir. 1970), *cert. denied*, 401 U.S. 924 (1971). Here, it appears on the face of the indictment that the transactions underlying the counts are logically related. United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005). Inasmuch as there is a nexus between the counts of mortgage fraud, Counts 1-45 and defendant's alleged resisiting of officers in an attempt to evade apprehension on those charges, Count 46, Rule 8(a) requirements for joinder of charges have been met as there is a nexus between those charges.

**B.     Rule 14 Inquiry**

The second step requires weighing alleged prejudice against judicial economy. Even where Rule 8 joinder is proper, allegations that joinder of counts will prejudice the defendant by preventing a fair trial must be weighed against the court's interest in judicial economy. Rule 14 provides, as follows:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed.R.Crim.P. The issue under Rule 14 is whether prejudice due to joinder would likely infringe a defendant's sixth amendment right to a fair trial. United States v. Boffa, 513 F. Supp. 444 (D. Del. 1980). In order to warrant severance, the moving defendant must satisfy the burden of showing prejudice which will interfere with such defendant's constitutional right to a fair trial. 8 Moore's Federal Practice, at ¶ 14.02[1], 14-5, 6, citing United States v. LaRouche, 896 F.2d 815 (4th Cir. 1990). Conclusory allegations that a defendant will be unduly prejudiced will not suffice; the burden is on the defendant to show that joinder will probably result in undue prejudice meriting severance. United States v. De La Cruz Bellinger, 422 F.2d 723 (9th Cir.), *cert. denied*, 398 U.S. 942 (1970); cf. United States v. McClure, 734 F.2d 484 (10th Cir. 1984).

In this case, defendant argues that in trying the assault/resist charge in tandem with the fraud charges, it is more likely that a jury will convict him on the fraud charges as the charge of assault is likely to inflame the jury. As expressed at the hearing, this court has closely considered such contention of prejudice. After a defendant's initial showing, the court must balance such concerns with the court's interest in "speed, efficiency and convenience in the functioning of the federal judicial machinery...." Cataneo v. United States, supra. In United States v. Jamar, 561 F.2d 1103 (4th Cir. 1977), the Court of Appeals for the Fourth Circuit held that any possible prejudice stemming from the joinder is lessened where the evidence of the joined crimes "would be mutually admissible for legitimate purposes in separate trials for each offense." Id., at 1106-1107.

Clearly, the government successfully demonstrated at the hearing that it would be entitled to a "flight instruction" at trial inasmuch as defendant's attempts to evade arrest and allegedly assault officers in his final attempt at evasion would be evidence the jury could consider as to consciousness of guilt.

> We have recognized that, "in appropriate circumstances, a consciousness of guilt may be deduced from evidence of flight and that a jury's finding of guilt may be supported by consciousness of guilt." *United States v. Obi*, 239 F.3d 662, 665 (4th Cir.2001). In order to do so, however, a jury must "be able, from the evidence, to link such flight to consciousness of guilt of the crime for which the defendant is charged," and the prosecution must offer "evidence supporting all the inferences in the causative chain between flight and guilt." *Id*. "To establish this causal chain," we have emphasized, "there must be evidence that the defendant fled or attempted to flee and that supports inferences that (1) the defendant's flight was the product of consciousness of guilt, and (2) his consciousness of guilt was in relation to the crime with which he was ultimately charged and on which the evidence is offered." *Id.* at 665-66.

United States v. Jeffers, 570 F.3d 557, 568 (4th Cir. 2009). The government's proffer has touched all the bases for a flight instruction and, if it puts on evidence at trial in conformity with its proffer, the government will be entitled to such an instruction. As the Court of

Appeals for the Tenth Circuit held,

> "Where evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together."

United States v. Foreman, 87 Fed.Appx. 107, 110, 2004 WL 95876, *2 (10th Cir. 2004)(citation omitted; quoting United States v. Rock, 282 F.3d 548, 552 (8th Cir.2002)). Similarly in United States v. Peoples, 748 F.2d 934 (4th Cir. 1984), the Court of Appeals for the Fourth Circuit held, as follows:

> Unfair prejudice does not result if evidence admissible to prove each charge is also admissible to prove the other charge. Peoples does not establish unfair prejudice because evidence of flight is admissible to prove guilty conscience and evidence of the underlying offense is admissible to prove motive for flight under Fed.R.Evid. 404(b).

Id., at 936 (citations omitted).

In determining the extent of any alleged prejudice, the court considers whether, under all the circumstances, it is within the capacity of the jury to follow the court's instructions to keep separate the relevant evidence. United States v. Diaz-Munoz, 632 F.2d 1330 (5th Cir. 1980). This is, perhaps, the thrust of defendant's motion. Defendant cannot, however, satisfy his burden of showing that he would probably be prejudiced. United States v. De La Cruz Bellinger, supra. As evidence of flight is admissible to prove guilty conscience as to the fraud charges and evidence of the underlying offense is admissible to prove motive for flight, the evidence on Counts 1-45 is relevant to Count 46, and *vice versa*. The court is very aware that the evidence in this case may prove resisting and attempted flight, rather than assault. In such circumstances, a jury, equipped with appropriate instructions and a clear presentation of evidence, can be expected to provide defendant with a fair trial. Defendant's sixth amendment rights are further protected by his ability to renew this motion at the close of the

evidence. United States v. Free, 841 F.2d 321, 324 (9th Cir. 1988).

**C.  Conclusion**

When placed in the balance, the court's interest in trying all charges against this defendant in one trial outweighs the potential for prejudice which defendant has identified. The court will again have the opportunity to reconsider defendant's motion at trial if it is renewed at the close of the government's evidence and to limit the use of the word assault until and if sufficient evidence of it is provided.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Sever Counts (#85) is **DENIED**.

Signed: August 9, 2012

Max O. Cogburn Jr.
United States District Judge